**CV 12-3280**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ARNOLD BROWN and ANTONETTE MATHERSON,   COMPLAINT
                                      Plaintiffs,

                                                  Jury Trial Demanded

-against-

THE CITY OF NEW YORK, NEW YORK POLICE
DEPARTMENT, JOHN DOES 1-4 AND JANE DOE 1,
*individually and in their official capacities*,
                                                  Defendants.
------------------------------------------------------------------X

Plaintiffs ARNOLD BROWN and ANTONETTE MATHERSON, by and through their attorney, LAW OFFICE OF MATTHEW S. PORGES, ESQ., complaining of the Defendants herein, alleges, upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This is a civil action based upon the Defendants' violations of the United States Constitution, as enforced by 42 U.S.C. §1983, New York common law, and any other common law or statutory cause of action that can be inferred from the facts set forth herein.

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and under 28 U.S.C. § 1343, as Plaintiff's claims arise under the United States Constitution, as enforced by 42 U.S.C. §1983. The supplemental jurisdiction of the Court (28 U.S.C. § 1367) is invoked over state and local law causes of action.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## PREREQUISITES FOR STATE LAW CLAIMS

4. The prerequisites for Plaintiffs' state law claims have been completed.

5. On April 12, 2011, Plaintiffs duly served a Notice of Claim upon the Comptroller of the City of New York and upon the New York City Police Department. Said Notices of Claim stated the nature of the claims, as well as the date, time, and place and manner in which the claim arose.

6. On June 9, 2011, Plaintiff duly complied with the requirement of oral examination pursuant to Section 50-h of the General Municipal Law.

7. More than thirty days have elapsed since the Notice of Claim has been served upon the Defendants and Defendants have neglected or refused to make any adjustment or payment thereof.

8. This action is commenced within one year and ninety days after the cause of action arose.

## PARTIES

9. Plaintiff Antonette Matherson ("Matherson"), was, at all relevant times, and still is a resident County of Kings, City of New York, and State of New York.

10. Plaintiff Arnold Brown ("Brown") was, at all relevant times, and still is a resident County of Kings, City of New York, and State of New York.

11. Defendant City of New York ("City") was and still is a municipality incorporated and organized under the laws of the State of New York. The City governs, supervises, operates, and otherwise controls the New York City Police Department and New York City Police Department's employees, agents, and servants and policies, practices,

customs, and procedures. The City is responsible for the acts and omissions of the New York City Police Department, its employees, agents, and servants.

12. Defendant New York City Police Department ("NYPD") was and still is an agency of the City. The NYPD is incorporated and operates under the laws and/or regulations of the State of New York and/or the City of New York. The City governs, supervises, operates, and otherwise controls the NYPD and NYPD's employees, agents, and servants and policies, practices, customs, and procedures. The City is responsible for the acts and omissions of the NYPD, its employees, agents, and servants.

13. Defendants JOHN DOES 1-4 AND JANE DOE 1, the names of said individuals being fictitious, at all relevant times, are and/or were police officers and/or ranking officers for the NYPD. Accordingly, at all relevant times alleged, Defendants JOHN DOES 1-4 AND JANE DOE 1 are and/or were agents, servants, or employees of Defendants NYPD and City. At all relevant times alleged, Defendants were acting within the scope of their duties as police officers and/or ranking officers for the NYPD.

## FACTS

14. On April 2, 2011, Plaintiffs, along with their infant son, drove to a laundromat named the Wash Club and located at 1469 Broadway, Brooklyn, New York 11221.

15. Upon arrival at the Wash Club, Plaintiffs parked in the parking lot of said laundromat, which parking lot is in the rear of the laundromat.

16. Plaintiffs then commenced to wash their clothes and the clothes of their infant son.

17. At around 1:30 p.m., Brown wandered out into the parking lot to smoke a cigarette. He was wearing sweatpants and a hooded jacket, with the hood around his head.

3

18. Within a few minutes, Matherson also went out to the parking lot to change Plaintiffs' infant son in Plaintiffs' vehicle.

19. While Plaintiff Brown was smoking, two uncover police officers, namely John Doe 1 and John Doe 2, approached Brown from inside an unmarked police vehicle. They instructed Brown to take his hands out of his pants, which he did. Brown then turned and started walking back to the laundromat.

20. John Doe 1 and John Doe 2 exited the unmarked police car and told Brown to stand against the fence that separates the parking lot from the street and the sidewalk. Brown asked what he had done wrong, and said officers pushed him up against the fence and attempted to place handcuffs on Brown. Brown repeatedly asked why he was being arrested, but Defendants John Doe 1 and John Doe 2 did not tell Plaintiff Brown.

21. After the officers placed handcuffs on Brown's right wrist, they called him an "animal."

22. Once the situation with Brown started to escalate, Matherson came out of the vehicle and walked near Brown and the officers.

23. Matherson asked Brown what was happening. He replied that "something is always happening" and he instructed her to contact his counsel. Brown then handed Matherson his cell phone.

24. Immediately thereafter or almost immediately thereafter, the officers grabbed Brown's left arm. The officers also took the cell phone from Matherson before she could call Brown's counsel. The officers then ordered Brown to the ground and ordered him to place his hands behind his back.

25. Matherson asked the officers to take caution with Brown's right leg, which he could not bend due to a prior injury. In response, the officers told Matherson to "shut the fuck up."

4

26. Shortly thereafter, the officers threw Brown to the ground.

27. Even though Brown was on the ground, one of the officers claimed that backup was needed. Two more officers, John Does 3 and 4, arrived in the parking lot of the Wash Club within a few minutes.

28. One of the officers placed his knee on Brown's face and/or neck and/or back. The officers also commenced to bend and kick Brown's injured leg. When Brown complained about the pain and inability to bend, one officer told Brown "fuck your leg." One of the officers punched Brown in the face, four or five times and with a closed fist.

29. Eventually, one of the officers pulled Brown up from the ground using only the handcuffs. The officers then placed Brown against the unmarked police vehicle. One officer held Brown's head onto the unmarked vehicle with a forearm. One or more of the officers tightened Brown's handcuffs so much that Brown felt the handcuffs digging into his wrists and/or hands. In addition, one the officers punched Brown twice while Brown was against unmarked police vehicle.

30. In addition, one officer falsely claimed that Matherson hit him. Based on this false claim, that officer grabbed Matherson, handcuffed her, and placed her against the unmarked police car.

31. When Matherson was placed against the car, her back began hurting, so she attempted to straighten her back. However, the officer who had accused her of hitting him forcefully pushed Matherson back down on the car.

32. While Matherson was against the unmarked police car, she was given a complete patdown, including in her breast and crotch areas, by one of the male police officers.

33. Before Matherson was placed in the police car, one officer hit her in the face.

5

34. During the attack by the police officers, several people gathered outside the Wash Club and watched Plaintiffs being embarrassed in that manner.

35. At the same time, the officers, without consent or a warrant, conducted a full search of the vehicle in which Plaintiffs had driven to the Wash Club. Nothing illegal was found in the van.

36. Both Plaintiffs were arrested in the parking lot but were not advised of their respective *Miranda* rights.

37. Plaintiffs were eventually placed in police vehicles. Brown started out in the unmarked vehicle, at which point he repeatedly asked what he had done wrong and the officers continued to tell him to be quiet and continued to call him an animal.

38. Brown was later placed in a van, where Matherson had been, and Plaintiffs were driven around for approximately two hours before they were brought to the precinct for processing. Other people were placed in the van after having being accused of drug-related offenses.

39. Plaintiffs were first taken to the County of Kings' 81st Precinct ("Precinct"), located at 30 Ralph Avenue, in the County of Kings, City and State of New York.

40. At the Precinct, Plaintiff Brown was given a strip search by the arresting officers. Approximately ten (10) officers watched as Brown was ordered to and did get completely nude. The arresting officers also ordered Brown to squat so that they could see into his anal cavity, even though Brown explained that he could not squat due to his knee.

41. While at the Precinct, Plaintiff Brown was threatened by one of the arresting officers, who called Plaintiff Brown "Three-Pac." The officer threatened that, if Plaintiff Brown commenced civil litigation, Plaintiff Brown would be killed like Tupac Shakur and/or

Plaintiff Brown would get in trouble with child protective services regarding his son.

42. After the Precinct, Plaintiffs were brought to Kings County Central Booking ("Central Booking"), located at 120 Schermerhorn Street, in the County of Kings, City and State of New York.

43. At Central Booking, Matherson was given a strip search by Jane Doe 1, a female officer. In conducting that strip search, Defendants lacked reasonable suspicion that Plaintiff Matherson was concealing weapons or contraband.

44. Matherson was detained at Central Booking for several hours before she was released.

45. As a result of Defendants' aforementioned misconduct, Plaintiff Matherson suffered severe mental and physical injuries, including, but not limited to, injuries to her right knee and right arm.

46. Plaintiff Brown's requests for medical treatment were ignored for hours while he was detained at Central Booking. Eventually, Plaintiff Brown was brought to Bellevue Hospital ("Bellevue") to receive treatment for his injuries. Plaintiff Brown remained in handcuffs during the course of treatment.

47. As a result of Defendants' aforementioned misconduct, Plaintiff Brown suffered severe mental and physical injuries, including, but not limited to, injuries to his right knee, nose, and wrist.

48. After treatment at Bellevue, Defendants released Plaintiff Brown on the side of Central Booking. Plaintiff Brown was not charged with any crime.

### FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF BROWN
(False Arrest/False Imprisonment)
(Against All Defendants)

49. Plaintiff repeats and realleges each and every allegation above as though more fully set forth herein.

50. By arresting Plaintiff Brown without justification and/or probable cause, Defendants intended to confine Plaintiffs.

51. Plaintiff Brown, by being handcuffed, placed in police vehicles, and then placed in cells at the Precinct and Central Booking, was conscious of said confinement.

52. Plaintiff Brown did not consent to said unlawful and improper confinement, which was not privileged in any way.

### SECOND CAUSE OF ACTION ON BEHALF OF BOTH PLAINTIFFS
(Assault and Battery)
(Against All Defendants)

53. Plaintiff repeats and realleges each and every allegation above as though more fully set forth herein.

54. In arresting and processing Plaintiffs, Defendants John Does 1-4 and Jane Doe 1 intentionally made bodily contact with Plaintiffs which was harmful or offensive in nature in that Plaintiffs were, at a minimum, pushed, pulled, slapped, kneed, punched, invasively searched, twisted, slammed, and/or had handcuffs tightened around them.

55. Prior to that harmful or offensive bodily contact, Defendants intentionally placed Plaintiffs in reasonable fear of said imminent harmful or offensive bodily contact.

8

## THIRD CAUSE OF ACTION ON BEHALF OF BOTH DEFENDANTS
(42 U.S.C. §1983)
(Against All Defendants)

56. Plaintiff repeats and realleges each and every allegation above as though more fully set forth herein.

57. Defendants have, while acting under color of state law, deprived Plaintiff of their constitutional rights, as secured by, at minimum, the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, and all related provisions of the New York State Constitution. Specifically, Defendants deprived Plaintiffs of Constitutional rights and protection under the United States Constitution and other state, federal, and local rights and protections. Those rights and protections included, but were not limited to, the right to be free from unreasonable searches and seizures, the right to due process, the right to be free from cruel and unusual punishment, the right to be advised of their *Miranda* rights, the right to be detained and/or arrested with the existence of probable cause, and/or the right to counsel, as well as the rights and/or protections against false arrest and/or the use of excessive force.

58. Defendants have intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiffs' constitutional rights. Such deliberate indifference may be inferred in, *inter alia*, the following ways:

   a. Inadequate training/supervision by the City and NYPD (collectively, "City Defendants") was so likely to result in the aforementioned conduct that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision; and
   b. Policymakers of the City Defendants tacitly condoned the aforementioned conduct.
   c. City Defendants' custom or practice of engaging in the aforementioned conduct in the absence of without justification and/or probable cause. Said practices were so

persistent and widespread that they constitute the constructive acquiescence of policymakers;

59. The John Does 1-4 and Jane Doe 1 (collectively, "Individual Defendants") unlawfully and personally participated in and/or permitted the aforementioned unlawful conduct to perpetuate, without abatement, in violation of Plaintiffs' constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs demand judgment against all Defendants in the form of and/or for compensatory, emotional, physical, and punitive damages (where applicable), injunctive relief, and any other damages and/or relief permitted by law. Plaintiffs also demand judgment against all Defendants for each cause of action and for all applicable and permissible damages, in an amount to be assessed at the time of trial. Plaintiffs further seek injunctive relief, including but not limited to, a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiffs' rights. Plaintiffs further demand all attorneys' fees, disbursements and other costs and all further relief, equitable or otherwise, to which Plaintiffs are entitled and/or which this Court deems just and proper.

Dated: Brooklyn, New York
June 29, 2012

Law Office of Matthew S. Porges, Esq.,
*Attorney for Plaintiff*
155 Water Street
Brooklyn, New York 11201
(718) 673-2578 (Phone)

*[signature]*
MATTHEW S. PORGES (MP-5826)